842 F.2d 1126
 46 Fair Empl.Prac.Cas. 636,
46 Empl. Prac. Dec. P 37,933
SAN FRANCISCO POLICE OFFICERS' ASSOCIATION; Lynn Torres;
Lillian Chai Mattoch; Henry Kirk, Plaintiffs-Appellants,
v.
CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation;
Civil Service Commission; Louis P. Lee; Rev. Dr. Howard S.
Gloyd; Carlota Texidor Del Portillo; Genevieve W. Powell;
A. Lee Munson, Defendants-Appellees.
 No. 85-2180.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 22, 1986.
Decided March 24, 1988.
 
 Christopher D. Burdick, San Francisco, Cal., for plaintiffs-appellants.
 Michael C. Killelea, San Francisco, Cal., for defendants-appellees.
 Robert Links, San Francisco, Cal., for amicus.
 James Wheaton, San Francisco, Cal., for intervenor-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, WIGGINS and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 This case began in 1973 when Officers for Justice brought suit alleging discrimination based on race and sex in the San Francisco Police Department. The suit was settled with a Consent Decree approved on March 30, 1979. Officers for Justice v. Civil Serv. Comm'n, 473 F.Supp. 801 (N.D.Cal.1979), aff'd, 688 F.2d 615 (9th Cir.1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). The parties to the decree were the City of San Francisco, the Civil Service Commission, the Officers for Justice, the San Francisco Police Officers Association, and the United States.
 
 
 2
 The decree required that the City employ good faith efforts to achieve particular goals for the employment of women and minorities in the police department and prohibited the use of methods of selection that had an adverse impact on women and minorities unless the City proved they were valid under the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. 1607.
 
 The City also promised to:
 
 3
 Refrain from discriminating at any time on the basis of race, sex, or national origin in hiring, promotion, upgrading, training, assignment, or discharge or otherwise discriminating against an individual employee or applicant for employment with respect to compensation, terms and conditions or privileges of employment because of such individual's race, sex, or national origin.
 
 
 4
 In 1983 the City gave examinations for promotion to Q-35 Assistant Inspector and Q-50 Sergeant. The examinations were in three parts: a multiple choice test measuring technical knowledge and problem solving; a writing skill test; and an oral test measuring ability to communicate, interpersonal qualities, and supervisory abilities. The Civil Service Commission set weights for the examination components as follows:
 
 Q-35 Q-50
 
 5
 Multiple choice: 45% 41%
 
 
 6
 Written communications 29% 29%
 
 
 7
 Oral examination 26% 30%
 
 
 8
 When the examinations were graded and weighed according to this formula there was a slight adverse impact on women in the Q-35 examination and a substantial adverse impact on minorities in both examinations. The city did not validate the results under the Uniform Guidelines so that under the consent decree no promotion could be based on these examinations.
 
 
 9
 In June 1984, on the recommendation of the City Attorney, the Commission revised the weights it gave the three parts in such a way that a larger number of minorities ranked in the top group. The Police Officers' Association objected to the use of the revised weights and made the contention that the reweighting was designed to discriminate against individuals on the basis of race. The district court, however, gave summary judgment for the City, 621 F.Supp. 1225, and the Officers Association appealed. We initially decided in its favor. We reconsider our judgment on rehearing.
 
 
 10
 This appeal is now moot. Officers have been promoted on the basis of the revised test. These beneficiaries of the revision did not cause the City to do what it did. It would be inequitable to penalize them by ousting them from their positions. United States v. Navajo Freight Lines, 525 F.2d 1318, 1326 (9th Cir.1975) (per Sneed, J.). No individual has a right to any particular position because the original test was not validated under the consent decree. Even an individual who has been the subject of discriminatory practice is not "automatically entitled" to have an incumbent laid off to provide a place. Firefighters v. Stotts, 467 U.S. 561, 579, 104 S.Ct. 2576, 2588, 81 L.Ed.2d 483 (1984). Much less is there such entitlement when no particular individual can show injury from the discrimination practiced.
 
 
 11
 There is no need to tell the City that it should not engage in discriminatory weighting of parts of an examination it has already given and weighted. The City now concedes a Supplemental Order of the district court dated October 27, 1986, "protects against scoring standards being set before examination and then changed after examination." The City's position is a concession that binds it. It is unnecessary to express the City's obligation in another injunction. Our opinion of March 12, 1987, 812 F.2d 1125, is accordingly withdrawn.
 
 
 12
 DISMISSED AS MOOT.
 
 WIGGINS, Circuit Judge, dissenting:
 
 13
 The opinion holds that the appeal is now moot because the City promises to not again set scoring standards for an examination and then change them after the test is given. In effect, the City recognizes that the rescoring of the examination was wrongful as to those officers who were displaced from the promotional lists by the reweighting. The majority, nevertheless, states that individuals who have suffered from such a discriminatory practice are not "automatically entitled" to relief.
 
 
 14
 Under Article III, section 2, of the Constitution, the federal courts lack power to decide questions that cannot affect the rights of litigants in the case before them. De Funis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam). An appeal becomes moot when: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Both conditions must be satisfied before it can be said that neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. Id. The burden of demonstrating mootness is heavy. U.S. v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).
 
 
 15
 The City has "voluntarily" promised to not again rescore examinations in the way that it did. As a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case ..." Id. at 632, 73 S.Ct. at 897. Whether the City's concession provides sufficient "assurance" that it will not again violate the Title 7 rights of its police officers is open to question. Certainly, however, the effects of the City's violation have not been eradicated. The officers who had previously scored in the top group and then were displaced by the reweighting still suffer the effects of the City's discriminatory practice. Their seniority, pay and rank in the Department are still adversely affected by the rescoring. It cannot be said that interim relief or events have completely and irrevocably eradicated the effects of the City's violation. These officers still possess legally cognizable claims for the effects of the City's discriminatory practice as it affected their careers in the Department.
 
 
 16
 It is unacceptable to me that this court finds a test to be improperly administered to the detriment of specific plaintiffs, but refuses to grant relief. To permit those who have been improperly rewarded to retain their positions is simply renouncing our duty to correct legal errors. Specific plaintiffs have experienced specific wrongs.
 
 
 17
 Nor is the avoidance of the asserted inequitable result of ousting the incumbent officers from their positions an adequate justification for the majority's action. The majority agrees that the incumbent officers were improperly selected. These improperly selected officers gain no equity by reason of their occupancy of unearned positions. That they were personally uninvolved in wrongfully reweighing the test is irrelevant. The plaintiffs are just as innocent. We should not choose between innocent classes. We should simply order the test to be regiven fairly and accept its results.